We all have a limitation that recites taking a content dependent name and comparing that name against a plurality of values. This is a key limitation in the 310 patent. It's what allows the invention to store and locate data in different servers in different locations without knowing either the address or the naming systems that are used in those various servers in different locations. I have a quick housekeeping question. I thought the claims at issue were 24, 32, 81, and 86. I think you didn't mention 32. Was that intentional? 32 is a dependent claim and my comment was the independent claims. 32 depends on 24. Thank you. One more housekeeping. Sorry, but 82? 81 and 86. Is 82 here? 82 is not here. You said in your footnote 70 is not here. 70 is not here. But you've listed in your statement of issues 24, 32, 81, and 86, so I didn't know what to do about 82. I stand corrected again. 82 depends on 81. But it is in the appeal? It is in the appeal. The board chose 70 as its representative claim, right? That's correct, Your Honor. But did it treat all the claims as rising or falling together? Or did it treat the claims as rising or falling with claim 70? Did you argue them separately? We argued them separately. The board's decision was a little bit unclear in that regard. It called claim 70 a representative claim. But claim 70 plainly has different language that we pointed out in the patent donor's response in the IPR. Namely, claim 70 talks about determining whether one of these content-dependent identifiers is in a database, as opposed to independent claims 24, 81, and 86, which all have the language of taking the content-dependent name and comparing it against the plurality of values. That language is not in claim 70. We did not appeal claim 70, honestly, for the reason that claim 70's language is a bit broader in regard with respect to what you compare the content-dependent name to. The... And I guess because the board at 815 specifically made a finding about a particular reference teaching the comparing the identifier to a plurality of values, I guess it's your view that the board necessarily reached, passed on, commented on the other claims aside from just what was representative claim 70. That's correct, Your Honor. At page 15 of the decision, the board expressly addressed the limitation of comparing the content-dependent name against a plurality of values. And the board found that the claims that issue in this appeal were all invalid for obviousness based on Woodhill and Stefik. And in the final written decision, what the board said was, we find that this limitation of comparing a content-dependent name against a plurality of values is in the Stefik reference. It didn't say anything about it being in the Woodhill reference. And the only evidence that the board cited for the finding that Stefik disclosed comparing the content-dependent name against the plurality of values was page 42 of the petitioner's, Apple's petition for IPR. That's at appendix page 1045. And if you go to appendix page 1045, what you see in regard to that is nothing. There is not a single word in page 1045 of the appendix, Apple's petition, page 42, that even talks about comparing a content-dependent name against the plurality of values. What that page talks about is some authorization and access, but it says nothing about comparing a content-dependent name against a plurality of values. And in fact, there's good reason why the board did not cite to the Stefik patent itself. It's not in there. There is nothing in the Stefik patent that talks about comparing anything against the plurality of values. Stefik has essentially two pieces of data that could be relevant. One is what it calls a unique identifier, but this is not a content- based identifier. A unique identifier is assigned by the server to a piece of data. So take, for example, the New York Times, and it may have a bunch of articles, say an article on Clemson winning the national championship. But what it would do if that was a proprietary... I think we all agree the unique identifier used in Stefik is not the content-based identifier that you claim, but maybe the larger point is Stefik does use a unique identifier, and it'd be obvious to use any unique identifier. Oh, look, in the prior art, it was known to have a content-based identifier based on a hash function. So we could use that version of a unique identifier in something like Stefik. Your Honor, even if you took the Woodhill content-based identifier and substituted it for the assigned identifier in Stefik, you still don't have the claims of the 310 patent because there is nothing in Stefik that describes taking that assigned identifier and comparing it against a plurality of values. That's not how Stefik does its determination of rights, of whether the user can see that file or not. That's what you're saying? That's absolutely correct. What do we do about the fact that, although not cited by the PTAB, Woodhill does talk about doing some sort of comparison. It says, for example, in the abstract, it says something about the binary object identifier associated with a particular binary object. There's some sort of comparing the current value of the binary object identifier to one or more previous values of the binary object identifier. That's correct, Your Honor. That's Apple's argument. In fact, Apple and the director both agree that it's not in Stefik. They don't make any argument in their brief that any identifier or whether it's assigned... Following up on Judge Stoll's point, this particular piece of the abstract from Woodhill, not only was it not cited by the board, it wasn't cited by Apple, including the appeal briefs. Now, it does cite column 17, among a couple other passages, but I guess to just follow up on Judge Stoll's point, these sentences at the very end of the abstract on the front page of the Woodhill patent seem to pretty clearly say that you use the binary object identifier and compare that to one or more previous values of that binary object identifier, i.e., you are using that content-based identifier to compare it against a plurality of values. What is incorrect about my reading, seemingly plain reading of that sentence in the abstract? Because you never compare the binary object identifier against a plurality in looking to take some action like accessing or authorization. In fact, the reason why this language, and it's in an abstract, so it's written at a very high level, but if you go into the specification, it explains what that means, is that in the backup server, you can have not only the previous version of the file, but you can have other versions of the file, so say, two versions ago, three versions ago, four versions ago. If you want to either back up now the current version that you have on your computer or you want to do something else with a particular binary object that's on your computer, the first thing you have to do is say, okay, what version am I dealing with on the backup computer? Really, when you go into the specification and read how this works, there is only a one-to-one comparison. In other words, you pick the version and then you say, okay, does the binary object on my computer match what is in that version on the backup computer? If it matches, you don't have to do anything because it's the same. If it doesn't match, then you take what's on your computer for that binary object and you put it into that particular version of what is in the backup computer. The reason why this language talks about one or more previous values, what it really means is one or more previous versions, but you are never taking the binary object identifier for a piece of data that's on your computer and comparing it against multiple values as part of the same transaction. You never say, okay, let me see if this piece of data is in the backup server someplace, which is really what the TrueNames invention is. Instead, you know exactly where that binary object is in the backup server, you know exactly what file it is in, and you can say, okay, is it at, is it in file 5, 300 bits from the beginning, and going from 300 to 400 bits, and you say, okay, it is not there. That is a one-to-one comparison. Now, later on, you might say, all right, well, it's not in the first backup version. Is it in the second backup version? Once again, you do a one-to-one comparison, but you never say for the same file, is it anywhere in here, by taking that value and comparing it against the plurality as part of the same transaction. That's why this language of the abstract is not entirely clear, but when you go to the specification, it makes it perfectly clear that the only time Woodhill ever makes a at any given time. In a different transaction, you may do the same thing, but there is never a time in Woodhill when you take a binary object and compare it against a plurality of values. Just search for it in some database, which would seem almost inherently to require checking, is it this, is it this, is it this? And that's exactly the TrueNames invention. Is that right? That's right, and that's the TrueNames invention. Woodhill never does that. Woodhill never says, here's a database of values. Let me see if it's somewhere in this database by checking against the plurality. Before you sit down and reserve your time, can I ask you about the motivation to combine a piece of it, and in particular, while the board said a couple of things that probably were not actually the legally correct inquiry, I want you to focus for me for a minute on A17, where it says, again, talking about Woodhill at the bottom, given the local area network disclosed in Woodhill, we are persuaded that one of ordinary skill in the art would have addressed access to multiple files and not just multiple versions of a single file in considering the Why is that not, just explain, a sufficient explanation of, here's a problem that somebody reading Woodhill would have understood to be a problem, namely, several people might have access and therefore you might want to look for an additional tool to help control access, and now you look and you find stuff. This was addressing Personal Web's argument as to why there was not a motivation to take stethics authorization and put it into Woodhill. What the patent office said is that, well, you might want to do it because multiple people can have access to the same file. First of all, that's wrong because Woodhill makes absolutely clear that the only person who can access a file from a backup computer is somebody who put it there in the first place. But even if you accepted the idea that, from a technical standpoint, that somehow somebody else might be able to get access to that same file, the board never goes on to say why you would use the stethics solution for that. There are plenty of ways, login requirements, many, many ways of preventing somebody from unauthorized access, and so simply rejecting Personal Web's technical argument that Woodhill does only allows a user who put a file on a backup database to get it back, by rejecting that argument doesn't necessarily mean that there is a motivation to combine stethic with Woodhill, and that's what was not explained by the board. I'm going to ask you another question. We'll probably have to give you back some time for a re-reply, but my thought about Woodhill was that the system is automatically doing these backups on their own, or doing these searches against backup files on its own. Is Woodhill also disclosing that the user can trigger the system to go find the backup file and then do a comparison of the different objects in the current file against the backup file? My reading of Woodhill is that it can work either way. You can either do backups at a set time frame, or the user can initiate a backup. I think that when you want to restore, you have a crash on your computer and you want to restore from the backup server to your own server, your own computer, that's something that the user initiates. Just to finish my answer to one final question, the reason why Woodhill can't serve as the comparison of an identifier to a plurality anyway is because that was not the basis upon which the board instituted. The board only relied on stethic, and under the APA, personal web's due process rights would be violated if the board had relied on Woodhill for this limitation. QM, we will restore your three minutes for rebuttal. Mr. Nuttall? Your Honor, may it please the Court? Before I address the issue on which the PTO intervened in this case, I would like to speak to one housekeeping matter. The PTO filed this brief assuming this case would be about Claim 70 and attack on Claim 70, the claim that was used as representative and that the board construed in its opening brief in this Court. Personal web does dispute that claim construction, but in its brief, it never identifies what other claim it may be talking about. I think in the statement of issues, they clearly identify which claims they intend to appeal. Claim 70 is not one of them. Didn't your brief, wasn't it filed after their opening brief was filed? It did, but the passage of the opening brief from personal web in this case that challenges the claim construction never identifies a particular different claim or even quotes particular different claim language. To the extent that personal web wants to shift this appeal from what the board relied on as representative, we would submit that argument as waived. In order to preserve an argument with respect to a different claim and the construction of a different claim, the opening brief would at least have to identify which other claim personal web seeks to assert. What about the fact that they say which claims are going to assert, which claims are at issue right in their statement of the issues and then they made a decision that they would let Claim 70 go and they were going to assert other claims or go on appeal on other claims. It seems to me like that's an intelligent decision and one that we should respect because if people make decisions on what to limit the issues to and make those kind of judgments, I wouldn't want to discourage that. So, why can't I look at the statement of issues and understand which claims they're relying on? I can also look at which claim they said was the claim that they were relying on in their statement of the facts where they identify what the claims are. Why can't I rely on that and why couldn't you rely on that? Because, Your Honor, there are several claims identified and in order for the appellee, for example, to respond intelligently to a claim construction argument, we at least need to know which claim you're talking about and the specific claim language. This feels like maybe beating an almost dead horse, but I mean on page two of their brief, they say personal web does not appeal Claim 70. It lists 24, 32, 81, and 86 and they sort of forgot about 82. And then the second question about BRI, they use, they quote content-dependent name, content-based identifier, digital identifier. Don't those come from the claims that remain, not the one they expressly said aren't here? It is in some of the claims, but a party seeking to respond to the appeal needs to at least be informed which claims you are talking about. What about this page two in the footnote that Judge Toronto referred to where it expressly says, this is a footnote that says personal web does not appeal Claim 70. They did make clear that we're shifting from Claim 70, but again, in the two pages of their brief, pages 51 and 52 of the opening brief, they never identify which other claim they are talking about. And further, the PTO would point out, even if we considered all of those claims collectively, the principal dispute with the board's claim construction is the importation of the terms, at least and to some extent. Those terms appear in Claim 70. And I believe personal web at this point has conceded that the board's claim construction of Claim 70 is proper because it's okay to import terms into the construction that actually appear in the claim. With respect to other claims, and again, we're not sure which one they assert, where those two terms, at least and to some extent, don't appear, I'd refer the court to page 14 of the board's opinion where the board construed the prior art. And it's clear the board understood the prior art is essentially relying on the exact same technology that the claimed invention relies on, which is cryptographic hash functions. The court made clear that, the board made clear that it understood the prior art, as the Woodhill reference, as creating a digital identifier that changes. Can you step back and just, you said something that I guess caught my ear. I had thought, tell me if, I think maybe you just said the opposite of this, but I had thought that all of the claims that are actually on appeal, 24, 32, 81, 82, and 86, do have at least language that makes clear that in those claims, you don't have to use every bit of data in the file to create your identifier. At least, and counsel for personal web can correct me if I'm wrong, but I believe some of the claims do not have the at least and some qualifier. So in that context, the board's construction of claim 70 wouldn't carry along. But even to the extent that that qualifier didn't exist, again, the board made a clear finding, this is again at page 14 of the record, that the prior art is based on the same technology, this cryptographic hash function, which does depend on all of the data where the digital identifier changes if there's any change in the data. Your brief that you filed, as I read it, I thought only related to the procedural question. Yes, Your Honor. At issue here. Why are you talking about the merits? Why are you talking about defending the board's claim construction when your brief didn't address it? Because I wanted to at least address this issue about which claim is properly before the court. And this issue, regardless of how the issue on which the PTO intervened is resolved, we do believe affirmance is required because under either claim construction standard, the result would have been the same. But I would also like to address the issue of the proper claim construction standard. Again, the reason for which we intervened in this appeal. And you did do this in one minute because that wasn't even a point argued before. So I'm not sure we should be talking about it. And I don't want to extend the time. Well, how about if I just ask you a question about it? And then we can end it there. Is it your understanding that if, let's do a hypothetical. Where in an IPR, someone files in a motion to amend. And in the final written decision, the motion to amend is granted. And the amended claims are found patentable. But the board at the same time in the final written decision finds other claims to be unpatentable. And then the patent owner appeals that adverse decision on unpatentability for the other claims. But during the pendency of that appeal, the patent expires. What is the PTO's position as to the status of those approved amended claims? Isn't it the PTO's position that those amendments would have to be backed out and dissolve? Because now the patent has expired? That is what our regulations require. And it's effectively compelled by the language of Section 318 as well. We'd submit, though, that the proper- So I guess under those circumstances, the whole point of using BRI is having the ability to amend. And under those circumstances, the ability to amend will have been illusory because there was an attempt to do it. And then it was taken away. This Court's review, though, on review of the board's decision is whether it was reasonable for the board to use BRI at the time. And to assess the reasonableness of that determination, this Court should ask, what did the board know at the time? At the time, was there a reasonable opportunity to amend? Now, the typical case, most of our cases settle or about half of them settle. Many aren't appealed. And of those that are appealed, overwhelmingly, they're resolved within a year. But there are the extraordinary cases that result in a remand or a hearing on bonk or Supreme Court review. So my last question to you is, is it the agency's view that the Federal Circuit, in my hypothetical, would also need to be using broadest reasonable interpretation of the Phillips now that we're looking at an expired patent? This Court's function is strictly an appellate function. So it should be reviewing the reasonableness of the board's interpretation under BRI if there was a reasonable opportunity to amend at the time that the board made its decision. But again, we'd urge the Court to consider that the board at the time that review is instituted when it has to decide which claim construction standard to use, it doesn't know how long an appeal may extend. If this Court adopts a review standard that creates an absolute right to use of the Phillips standard if the appeal happens to extend beyond the expiration of the patent, first of all, that's something the board simply can't foresee. And second, we'd urge the Court to consider the effect that may have on patentee behavior. Typically, an appeal is always wrapped up within a year. But there are a number of avenues that patentees can pursue in order to extend an appeal. Again, that doesn't matter if the claim construction standard isn't driven by the time for appeal. If this Court adopts an absolute rule that you always use Phillips if the appeal extends, people can seek extensions. They can seek re-hearing of the board decision. And right now, the PTO doesn't release those things. We would urge this Court to instead adopt an approach, at the time the board made its decision to use BRI, was there a reasonable opportunity to amend? Is it likely that amendment could have been entered and adopted? And that assessment, in your view, takes account of any opportunities to request and to receive expedition? That's a factor this Court should consider. And perhaps a reasonable opportunity to appeal in a particular case. But again, if an approach is adopted that regardless of what could be reasonably expected for an appeal and reasonably expected to conclude the case and enter an amendment, if an absolute approach is adopted, again, a typical case is finished within a year. But PTO has calculated internally that you can reasonably extend an appeal by about three years by pursuing every avenue and every extension. And we wouldn't want to see this Court adopt a review approach that incentivizes that kind of behavior. Instead, we'd urge this Court to look, at the time the board made its decision, was there a reasonable opportunity to amend? To get amendments and have them entered with a reasonable time for an appeal rather than this absolute approach, which may, again, encourage this kind of strategic behavior of extending these appeals. And again, I'm very aware that some of this Court's recent decisions suggest such an approach that if the appeal in any way extends until the time the patent expires, then you shift to a Phillips claim construction. And again, if this Court uses Phillips, the board really wants to use Phillips as well. I mean, we don't want our decisions reviewed under a different review standard. Rather than that, how long can you extend the appeal approach, we'd urge this Court to look, was it reasonable at the time the board made that decision to use the BRI approach? Mr. Jay. Good morning, Your Honors. May it please the Court. Personal Web mischaracterizes the board's findings with respect to the element of the claim or the limitation concerning the comparison of the content-dependent identifier to plurality of values. Contrary to what Personal Web has argued, the board's finding for this limitation is paragraph starting at the bottom of page 21 of the final written decision and continuing on to page 22. There, the board makes the finding that Woodhill discloses a determination that the content-based identifier for the particular data item corresponds to an entry in a database on the backup file server. Now, while the board does not use the word plurality, there's no magic to that word. What the board is talking about here is that Woodhill discloses that the local workstation sends a request to the backup file server with the binary object identifier. When the remote backup file server receives the request from the local computer, the backup server, to provide access to the binary object that the local workstation is looking to restore, must compare the binary object identifier that was part of the request to the file server's mapping of a plurality of binary object identifiers. Now, unless the backup file server is storing... I'm sorry, which... Can you quote me something from column 17 that... Sure, it's... ...matches what you're saying? I understand you're zoning in on this term, binary object identification record 58. Sure. First of all, I do think there's a bit of an issue with the premise of what you're saying, because the argument was whether Woodhill's binary object identifiers are used to access binary objects, but it doesn't talk about comparing the binary object identifier to a plurality of values there. Sure, well, Dr. Goldberg... So, I'm concerned that you're reading something in to this section of the board's decision, which is simply responding to Personal Web's argument here, as opposed to its Prima Fasci review at page 14, 15, which seemed to really rely on Stefik. Well, the passage you're talking about at pages 14 and 15, and that paragraph, the first two sentences are about Stefik, and it talks about what's in Stefik, and then it cites two portions of Stefik, and then it goes on to talk about sort of the last two aspects of the claims, one being the comparison to plurality of values, the second being selective access, and there it does not actually cite to Stefik, it cites to Apple's petition at page 42. Right, and page 42 of your petition was all about Stefik. It was actually about the combination of Woodhill and Stefik, and I believe that all the board was doing there was talking about the combination, because the sentence that Mr. Hadley is referring to talks about both selective access and comparison. Here in paragraph, on the bottom of page 21, and going on to page 22, they're really talking about this determination. They don't use the word comparison, but the determination is essentially the same thing, and they cite to, and we had cited to this in our petition, and Dr. Goldberg's declaration, Woodhill, column 17, line 40 to 46, was talking about- I'm sorry, did you say the board cited to that on page 21 and 22? Correct, they cite on page 21- Is that all I see at the bottom of page 21? Correct, yes. All right, thank you. They cite to, like I said, column 17, line 41 to 46. They were talking about the local workstation sending the update request to the remote backup file server that includes the binary object identification record 58, which Dr. Goldberg had testified, and which the board had found contains the binary object identifier. Dr. Goldberg had testified that this passage in conjunction with Woodhill figure one, which is explained in column three, which shows the multiple local workstations, in fact, the backup file server, would disclose to a person of ordinary skill in the art, this determination step, or the comparison to a plurality of values that I was mentioning before. Unless the backup file server only has a single binary object, which doesn't make much sense, it would necessarily be the case that when the request comes to the backup file server, that in order to even locate the binary object that's at issue, that the backup file server would have to do the comparison of the binary object identifier that's part of the request to its own mapping of binary object identifiers. I have a question for you about your brief. I'm wondering, why did you address claim 70? A lot of your analysis in showing why it is that there's substantial evidence to support the board's decision is based on limitations in claim 70, which is not even at issue on appeal. So why is your brief talking about that? It's simply a function of two things. One, that the board found that that was an illustrative claim. And while Mr. Hadley claims that that claim is substantially different from the other claims that are at issue on appeal. It has different limitations. It's not on appeal. And I don't think that the PTAB said in any way that it was going to have those other claims that are on appeal rise or fall with claim 70. And so it's kind of hard on appeal. We're sitting here looking to see whether there's substantial evidence to support the board's decision on claims that are on appeal. And you're talking about claim 70. Well, I would submit that while claim 70, the language might be a little bit different, each of the claims, each of the independent claims that are appealed, the language is a little bit different. But I think conceptually, it's the same. Again, this determination of claim 70, while it doesn't use the word plurality, certainly there's not a significant difference between the way that claim 70 expresses this determination and the comparison to a plurality of values in the remaining claims. Certainly, while one could perhaps argue that the path here was maybe less than perfectly clear where we can discern the path that the board took, which I think we can from the final written decision, the decision should be affirmed. Can we go there? What is the ultimate combination? It's hard for me to see in the board's decision what it was envisioning. Is it envisioning STEFIC, using whatever insights from STEFIC in the Woodhill regime? Or is it using whatever insights from Woodhill into the STEFIC regime? I think what the board is doing- All I got was seeing that a combination of the teachings from the two references would have taught all of the limitations in the board's view. And then it kind of ends right there and then says, we are persuaded that all the claims are obvious. Well, I think we see on the final written decision on page 17, where it's talking about it would have been obvious for one of ordinary skill in the art to have addressed whether each user or each local computer was authorized to access a particular binary object. I think we can see in that paragraph, we're discussing motivation combined. What the board is doing is taking Woodhill's backup restore system, which is the aspect of Woodhill that we had relied on in our petition, and combining that and essentially adding an authorization layer from STEFIC, adding an access piece from STEFIC within the Woodhill framework. Woodhill is the primary reference. Correct. Could you explain what precisely is being taken, borrowed from STEFIC, and then injected into the Woodhill's backup file system? What's being taken from STEFIC is the concept of selective access using- I know the abstract level, there's this notion of selective access in STEFIC. But now specifically, what is going to be changed to the Woodhill backup system that'll make the Woodhill backup system different from the way it already is? What we could have is a system on Woodhill where you have this authorization layer so that a particular user who didn't have access to another user's backup files wouldn't have access to those files. You can envision an instance where- One way. How does it operate specifically? We could have an instance where different local workstations at one point had access to the same file that is backed up on the backup file server. But over time, permissions change. One local workstation could make a change to a particular file and suddenly the other local workstation no longer has access to that backup copy of that file or document. So you can add in a selective access piece in that manner. The selective access piece in STEFIC, it seems to be digital work specific, right? And then you have to have some kind of ticket, digital ticket, in order to access that work? There is certainly extensive discussion in STEFIC of that, but I don't believe that that piece would be necessary to be imported into what we're talking about in Woodhill. All right. So I guess even with that combination, how do you then get to the claimed invention? So we have- I guess you have to rely on whatever column 17 says in Woodhill to be a comparison of a plurality of values. Correct. Woodhill- You need us to interpret page 22 of the board decision as the board making that finding. That's correct. And I think we can see that that's the finding rather than earlier on, page 15, as Mr. Hadley had explained. But that's correct. We have the content-based identifier from Woodhill and we have sort of the second aspect of the claims, the comparison of the plurality of values. We get that from column 17, the restore procedure of Woodhill, in conjunction with figure one of Woodhill. And then the last limitation about this selective access piece, based on this comparison, we have the comparison from Woodhill in conjunction with the selective access aspect from STEFIC. So you're just getting the idea of selective access from STEFIC, but then you've got to the primary reference. That's correct. And I think we had argued that in our petition. Dr. Goldberg discussed it in his declaration. And the board does include language to that effect in the final written decision. Just to clarify, even though 815 appears to suggest that the board is looking at STEFIC for comparing something to a plurality of values, you're not relying on that. You're relying on the Woodhill column 17 for the notion of comparing an identifier to a plurality of values. That's correct. We think where the board wanted to rely on STEFIC, it clearly cited STEFIC in the two preceding sentences, as it did elsewhere throughout the decision. In the sentence that we're talking about on 815, it does not. It actually talks about, it cites to Apple's petition. So it's not pointing to not relying on STEFIC. Can I ask you this one question? Certainly. That I think I asked Mr. Mattal about the claims actually at issue here. Do all of them have or do some of them lack this language about at least some portion of the file? Each of the claims at issue here does include language that the at least some. The reason I ask, I think, I hope this is obvious, that the reason I ask is that with that language, it may well be that in this case, there isn't any difference between Philips and BRI. There is absolutely no difference. One thing that I maybe would just quickly point out is that Personal Web made it very clear to the board. They said it numerous times in their patent owner's response. Personal Web, for the first time, had mentioned the Philips standard. But then in that same submission said that the Philips standard makes no difference whatsoever to the constructions of any of the terms that the board has construed. And then at the oral hearing, Personal Web's counsel was specifically asked by the board about the Philips standard. And Mr. Rowley at the time responded, well, yes, the Philips standard should apply, but it makes no difference. The first time that we see any mention whatsoever that Philips makes a difference was in the motion for rehearing. But even there, they argued that it made a difference with respect to one of the identifier terms and for a reason that they're not even arguing here. So we would submit that certainly they've waived any argument that they have that the Philips standard makes a difference. I think we briefed that. But even if for some reason they didn't waive and you found the Philips standard did apply, it would make absolutely no difference here. Thank you very much. And to even things out, you've got 10 minutes. Hopefully, I won't need all of that. Could you start maybe just by answering that same question? Do all the claims at issue have at least some language in it? Yes, they do. And I agree with counsel on that. But for claim 32, right? Correct. Well, claim 32 is a dependent claim, but yes, that's correct. And I believe it does make a difference if for no other reason that a district court construing that same language under the Philips standard came up with a different construction than the patent office did under the BRI standard. So I believe that it does make a difference. And that regardless of whether it makes a difference or not is something that should be decided by the board in the first instance, because this court has made absolutely clear in the In Re CSB systems case that... District court didn't wrestle with at least some language in the claims, right? It did not wrestle with that. Correct. It simply took the claim language on its face and said what is the construction and did not include the at least some language. And the CSB case I think was different in that that patent had expired at the time that it was before the board. Is that right? That's right. Although this patent did expire while the board still had jurisdiction. It was after the first decision, but before the decision on rehearing. Correct. Okay. If there are other questions on that, let me jump back to this issue about the plurality of values comparison. And if we start with again at the abstract, it's clear that what the abstract is talking about is the initial backup. And the substantive description of that is found in columns eight and column nine of the Woodhill patent. And what that says is that the first thing that you do if there's a user initiated backup is you determine which version do you want to use on the backup server to back your local computer up to. Because there may be multiple versions. And then it says you make a one-to-one comparison of the binary object on your computer with the binary object. Can you go to column 17? Because it's really the restore an old backup embodiment that Apple is really focusing in as well as pointing to the board's decision at page 22, which also cited to column 17. And Apple is arguing that the board was also relying on column 17 for the notion that in the restore embodiment, it's comparing that binary object identifier to a series of binary object identifiers in order to call up the backup file. That's correct. Apple does not contend that the initial backup satisfies the claim language. Instead, they point to this granularization process and the restore procedure for database files. So why is what they're arguing wrong about the substance of column 17? What's going on there? Two reasons. First, Apple admits that the board did not rely. In fact, quote, the board, however, did not rely on these granular identifiers for the disclosure of this limitation, the comparison against the plurality of the challenge claims of the 310 patent. Apple admits that the board did not rely on it. There's nothing in the board. There's a reference in rejecting a personal web argument in the board's decision, but the board never ties that back to the comparison against a plurality language. The second reason is because column 17 expressly says, quote, where the distributed storage manager program 24 for each. What lines are you reading? I'm sorry. Column 17 beginning at line 51. Thank you. In fact, line 50, it says program control then continues with step 450 where the distributed storage manager program 24 for each binary object compares the contents identifier. This is a special identifier that is determined for the granules as opposed to the binary object identifier, which the board discusses. So it compares the contents identifier of the next granule in the work area of the remote backup server 12 against the corresponding contents identifier calculated in step 444. So again, even with this granule procedure, there is only ever a one-to-one comparison between identifiers. I agree with you that once you have the backup file and then you have all the little granules and the corresponding contents identifiers, that's a one-to-one comparison. But again, what Apple and the board are focusing on are at lines 40 to 46, right? The binary object identification record 58. And, you know, they need to do some interpretation, but they're saying by using that, which has the identifier inside of it, you are getting access to the backup file you want to do the granular comparison to. And when you do that, get that backup file, you have to compare the identifier in the record to a host of identifiers in order to find the backup file you want. So what's wrong with that? What is wrong with that is that when you backup using, say, a database, using the granular process, and you have a whole bunch of binary objects, the system keeps track of what binary object has changed by setting a bit and creating what's called a bitmap with either a one or a zero. That's the procedure described in 5H. And so when the binary, I'm sorry, when the binary object identification record gets sent, if you continue down this paragraph beginning at about line 47, it talks about the distributed storage manager program reconstituting each previous version of the binary objects according to the techniques illustrated in the flow chart depicted in figure 5A. So the binary object identification record is needed to reconstitute the binary objects using the procedure in 5H. If you look at the procedure in 5H, what it talks about is checking the binary objects for that bit set of a one to zero to see if it's changed. Because if the binary object, which is about one megabyte, as opposed to the granules, which are one kilobyte, if an entire binary object is not changed because the bit is set to zero as opposed to a one, and there's a hundred binary objects, you know you don't have to do anything with those binary objects. You only have to focus on the few binary objects where something has changed. So sending the binary object identification record, it's playing from this language, allows the system to simply make a determination of which binary object themselves you have to deal with, and which ones you don't have to deal with. There is never a comparison of binary objects made, and certainly no binary object against the plurality of value. Procedure in 5H, which is the procedure that uses- We don't actually have that piece of- I realize that that was left out of the, the figure itself was left out of the appendix, but this is described in detail step-by-step in column 16, which is part of the appendix. Why wasn't the entire patent included in the appendix? These are the two prior references that were relied on by the board. Why aren't they in the appendix? That's my fault, Your Honor. I should have double-checked to make sure that they were included in total, and my paralegal followed the normal procedure at my direction of just including the pages that were cited in either party's brief or in the brief of the patent office. Unfortunately, that particular figure wasn't cited, but the description of what's done in column 16 was cited, and that was included. But you're right, and we'll make sure that happens in future appeals. So, if there are no other questions- Can I just ask, did you make a separate argument about Claim 32 from the argument you've made about the other claims? No. Claim 32, where our whole argument focuses on the language of comparing a content-based name against the plurality of identifiers, Claim 32 does not deal with that. Right. No, no. I mean, as to this claim construction dispute, and in particular, whether we actually do have to decide Phillips versus BRI, because Claim 32, for all the world, looks like the lone exception to what is otherwise present in all of the other claims, language that makes it absolutely clear you don't need to use all of the data. That's correct, and that is something that... We think that this case, at the very least, should go back to the Board to determine what the proper claim construction is under Phillips with respect to at least Claim 32. But our argument on claim construction really just boils down to the fact that we think this Court should hold that the Patent Office, just like this Court does, should apply Phillips once the patent is expired, and if that requires another round of briefing, so be it. It's an unusual circumstance when a patent is going to expire while the Board has jurisdiction. It's even more unusual where it will happen, where a patent will expire after a final written decision, but during a motion for reconsideration. But if it happens, we think that the law is black letter. Phillips should apply from that point forward, and the Patent Office can... It would be moot to do that, right? That's correct. We think it does make a difference because of what the District Court did in another case. We also think, though, that this Court doesn't have to get to that issue because we don't think that the combination of Woodhill and Stefik teach the key limitation of the patent, comparing a content-based identifier against the plurality of values, either in the initial backup in Woodhill or in the granularization part of Woodhill. But we don't even have to get to Woodhill because the Board expressly relied solely on Stefik, and the Board could not have relied on Woodhill after pointing to Stefik in its initiation decision. Just to answer another question that Your Honors had, the way I read the decision, and I think it's perfectly clear, is that what the Board did was say, you can take Stefik in the authorization procedure, and as Judge Chin suggested, swap out the assigned identifier for the Woodhill identifier. That's at page 15 of the decision, and the rest of the decision was simply going through personal webs, nine arguments, some of which related to adding Stefik to Woodhill, and for some reason just addressing all of those arguments. Thank you very much. The case is submitted. Thank you.